====

## Case No. 3,965.

### In re DOLE.

[7 N. B. R. 538;[1] 7 West. Jur. 629.]

District Court, S. D. New York. 1873.

BANKRUPTCY—EXAMINATION OF BANKRUPT AFTER DISCHARGE.

An order and summons were issued requiring a bankrupt to appear and be examined as a

[1] [Reprinted from 7 N. B. R. 533, by permission.]

witness. Under the advice of counsel he declined to be sworn until after the decision of the court. The preliminary objections were substantially as follows: First. That the order and summons were unauthorized by law. Second. That the name of the assignee is being used for the purpose of extorting a settlement of stale claims against the bankrupt, more than two years after he has received his discharge, when it is too late to vacate said discharge. Third. That the bankrupt cannot now be examined for the purpose of founding or aiding any prosecution to be commenced by the assignee against third persons other than the bankrupt. Fourth. That the bankrupt cannot now be examined for the purpose of instituting or aiding a proceeding to vacate his discharge. *Held*, that the second and fourth objections are well taken; that the first and third objections are not well taken; that on the second objection the register ought to suspend all further proceedings under the order and summons.

[Cited in Andrews v. Dole, Case No. 373; Cady v. Phenix Fire Ins. Co., Id. 2,284.]

[In bankruptcy. In the matter of Nathaniel Dole.]

I executed and delivered to the assignee the usual assignment under section 14, conveying to him all the estate, real and personal, of the bankrupt, with all his deeds, books and papers relating thereto, and thereupon, by operation of law, the title to the property and estate, both real and personal, belonging to the said bankrupt, vested in the assignee from the date of the filing of the petition. No person but the assignee has any right to interfere with it, and to do so would be a contempt of the bankrupt court. 38 How. Pr. 396; In re Vogel [Case No. 16,983]; In re People's Mail Steamship Co. [Id. 10,970]; In re Kerosene Oil Co. [Id. 7,725]; on appeal [Id. 10,206]; Brock v. Terrell [Id. 1,914]; In re Wallace [Id. 17,094]. It then became the duty of the assignee to demand and receive from any and all persons holding the same, all the estate assigned to him by virtue of said assignment or intended to be assigned under the provisions of the bankrupt act, section 25. And he may proceed by an action at law, or in equity, or by a summary petition in the court of bankruptcy where the case is pending. Foster v. Hackley [Id. 4,971]; Bill v. Beckwith [Id. 1,406]. As to the assignee, the case is pending in relation to the effects of the bankrupt until the final discharge, by the court, of the assignee from his trust. The discharge of the bankrupt, does not, in any manner, affect the duties of the assignee in relation to his trust, and by section 26 of the act, "the court may, on the application of the assignee in bankruptcy, or of any creditor, or without any application, at all times require the bankrupt, upon reasonable notice, to attend and submit to an examination, on oath, upon all matters relating to the disposal or condition of his property; to his trade and dealings with others, and his accounts concerning the same; to all debts due to or claimed from him, and to all other matters concerning his property and estate, and the due settlement thereof according to law;

which examination shall be in writing and shall be signed by the bankrupt, and be filed with the other proceedings. And the court may, in like manner, require the attendance of any other person as a witness, and if such person shall fail to attend on being summoned thereto, the court may compel his attendance by warrant directed to the marshal, commanding him to arrest such person and bring him forthwith before the court, or before a register in bankruptcy for examination as such witness." On the 30th day of July, 1872, the assignee, by George W. Lockwood, Esq., his attorney, applied to me, upon affidavit of the assignee, to examine Nathaniel Dole as a witness in these proceedings, alleging that said Dole was the bankrupt, and was, on or about the 7th day of January, 1868, discharged by order of this court.

The material allegations in the affidavit of the assignee are as follows: "That deponent is informed and believes that said bankrupt, previous to the filing of his petition in bankruptcy, conveyed, in fraud of his creditors, large amounts of property to one Jules S. De La Croix, a brother-in-law of said bankrupt, which property said De La Croix held in secret trust for said bankrupt; that said property so conveyed vested by assignment in deponent as assignee; that the particulars of said conveyance and of said property are unknown to deponent, and deponent desires to examine said bankrupt and others in relation thereto, in order that suit may be instituted to recover the same, and also as to any consideration paid or agreed to be paid, or securities given by said bankrupt or by others at said bankrupt's request and in his behalf, to induce the creditors of said bankrupt to consent to his discharge, or not to appear in opposition thereto. Deponent further says that he had no knowledge of the aforesaid fraudulent conveyance until the month of June, 1872." On the 5th day of September, 1872, I issued the usual and ordinary summons, requiring Nathaniel Dole to appear and be examined as a witness in these proceedings, and in obedience thereunto said Dole appeared in person and also by counsel; was called as a witness. Counsel for the assignee applied to have the witness sworn, whereupon the said witness filed "preliminary objections" and other papers, and upon the statements contained in said papers and objections, raised the questions of fact and law, and requested the register to certify the same to the district court, with his opinion thereon, according to law, and, under the advice of counsel, declined to be sworn as a witness in the case until after the decision of the district court thereon. The preliminary objections are as follows: First. "That the said order and summons are unauthorized by law, and that no further proceeding should be had thereon." Second. "That the said G. W. Lockwood, Jr., is using the name of the said assignee for the purpose of extorting from this deponent a settlement

of stale claims against deponent, more than two years after deponent's discharge in bankruptcy, when it is *too late* to vacate said discharge." Third. "That deponent cannot now be examined for the purpose of founding or aiding any prosecution to be commenced by the assignee against third persons other than deponent." Fourth. "That deponent cannot now be examined for the purpose of instituting or aiding a proceeding to vacate deponent's discharge."

This case is pending before me at the chambers of this court. I certify that in the course of the proceedings in this cause, the above questions arose pertinent to the proceedings, were submitted in writing, opposed by the assignee, and were requested by the witness to be certified to this court. Counsel for the assignee moved for the usual certificate to the court, that the witness may be declared in contempt, in order that an attachment might issue against him. I denied the motion on the ground that the witness had a right to have the question decided, and that his declining to be sworn as a witness, after his raising the objections and filing the papers relating to the same, was not an act constituting a contempt of court by rule of law. The better practice would have been to have made a motion at special term of the district court to set aside and vacate the summons issued by me. That would have raised the issues at once; but the witness may plead his privilege, and also as to jurisdiction, and bring up the question in this way. Counsel for the assignee objects to the filing of the papers and to my entertaining the application for the certificate until after Mr. Dole is sworn; that until then the witness has no standing in court. I decided that as the witness had obeyed the process of the court, had placed himself within its jurisdiction, the mere fact as to his being sworn, either before or after the decision of the district court, of the questions raised, was wholly immaterial, and did not prejudice any right of the assignee or witness, although as a mere witness he could not refuse to be sworn; but in this case, the witness and the bankrupt being the same person, I allowed him to plead his discharge as well as to the jurisdiction of the court as to his refusal not being contumacious. To the assignee, application for the examination of the witness to show what property the bankrupt had at the time of the filing of his petition; what property passed to the assignee; whether the legal title was in the bankrupt at that time and passed to the assignee; as to property which the bankrupt had conveyed to his brother-in-law, and with property and business connected with the same, and as to property belonging to the bankrupt which passed to the assignee by virtue of the said assignment, although the property was in the name or names of other persons, and in relation to the business done by the witness with the property belonging to the assignee, by virtue of the as-

signment, was an application he had a right, and it was his duty to make. In re Rosenfield [Cases Nos. 12,058 and 12,059]. The examination of such witness was an independent proceeding. In re Ellis [Case No. 4,400]. The examination may be had before the register (In re Tanner [Id. 13,745]; In re Lanier [Id. 8,070]); as the register has the same power as the district judge "except that he is not empowered to commit for contempt, or to hear a disputed adjudication or any question of the allowance of or suspension of an order of discharge" (In re Louis Hyman [Id. 6,984]). By rule 19 of the general orders in bankruptcy, the duties of an assignee are defined, and his actions governed by the orders of the court. In a recent decision of the supreme court of the United States, Chase, C. J., says in the opinion of the court, all the justices concurring: "That an assignee must do his duty," and it is but fair to hold, that if he neglects or refuses to do his duty, the court will, on motion, compel him to do so, which can be done by the judge or register, as the circumstances require.

After the assignee received the information as set forth in his affidavit, it became his duty to take the step he did to inquire into the facts as stated. If he had not done it, any person, either a creditor or a person interested, could have made a motion before me to compel him to do so; and also, to have him removed for not doing his duty. In re Blaisdell [Case No. 1,488]; 18 Wend. 652; 1 Denio, 659; 11 Johns. 254; 1 Grah. Pr. (3d Ed.) 661, 675; Gazz. Bankr. Dig. The application for the examination of the witness was properly made to me as the court before whom the testimony should be taken having charge of the case. In re Carrow [Case No. 2,426]; In re Heller [Id. 6,339]; 42 How. Pr. 274 [In re Blaisdell, Id. 1,488]. It was not necessary for the assignee to have stated in his affidavit the particular matters, nor to have shown any grounds for the proposed examination of the witness, as the assignee is a quasi officer of the court in this case, and that the court was satisfied of the good faith of the assignee's application. In re Lanier [Id., 8,070]; In re McBrien [Id., 8,665]. The summons was properly issued. In re Macintyre [Id., 8,821]; In re Lanier [Id., 8,070]; In re Brandt [Id., 1,813]; In re Vetterlien [Id., 16,926]. A witness may be examined in regard to property in which the bankrupt may, possibly, have an interest, and as to any property that the bankrupt owned or had a right, title, or interest to or in at the time of the filing of his petition in bankruptcy. In re Bonesteel [Id., 1,628]; In re Carson [Id., 2,461]. The power of the register in this case is the same as given to United States commissioners by act of congress, February 4th, 1872, which provides "that the commissioners who now are, or hereafter may be appointed by the circuit courts of the United States to take acknowledgment of bail and for other purposes, may and shall

exercise all the powers conferred on any court, judge or other magistrate, by the act." The granting of the discharge of the bankrupt does not oust the register of his jurisdiction of the cause. The discharge of the bankrupt is a mere incident in the ·proceedings. The marshaling and distribution of the estate is the subject matter before the court. The cause proceeds before the register until the final discharge, by the court, of the assignee from the trust. In re Puffer [Id. 11,459], Hall, J. By section 26 of the bankrupt law [of 1867 (14 Stat. 529)], the bankrupt is at all times subject to the order of the court. In re Lanier [Case No. 8,070]; In re McBrien [Id. 8,665]. Such control of the person of the bankrupt enables the court to enforce a distribution of a bankrupt's estate, and is from the first an ex parte adjudication upon his petition, subject to any and all orders that may be deemed necessary under the act to secure such distribution to the creditors. In re Bromley, 3 N. B. R. 169; 36 How. Pr. 53. It is also among the inherent powers of the court to exercise an equitable jurisdiction over its suitors, as well as the subject matter of the action in proceedings before it. 18 Wend. 652; 1 Denio, 659; 11 Johns. 254; 1 Grah. Pr. (3d Ed.) 671 –675.

In 1848 a law was passed entitled "An act to simplify and abridge the practice, pleadings and proceedings in the courts of this state." [Act April 12, 1848, p. 497, c. 379.] "Whereas it is expedient that the present forms of actions and pleadings in cases at common law should be abolished; that the distinction between legal and equitable remedies should no longer continue, and that an uniform course of proceedings, in all cases, should be established." This law is familiarly known as the "Code of Practice on Procedure," and by its provisions the practice of the courts of this state is regulated. Paragraph 6 of section 91 of the Code is as follows: "An action for relief on the ground of fraud in cases which heretofore were solely cognizable by the court of chancery, the cause of action in such cases not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud." Martin v. Smith [Case No. 9,164]. And is conclusive as to the objection as to the right of the assignee to commence these proceedings, and also an action. In an action for fraud, the statute does not commence to run until knowledge of the fraud is brought to the plaintiff. 37 N. Y. 657, unanimous decision, and the cases there cited. The act of congress, June 1, 1872 [17 Stat. 196], completing what the acts of February 28, 1839 [5 Stat. 321], February 3, 1853 [10 Stat. 153], and July 16, 1862 [12 Stat. 588], began, now conform the practice in the United States to the practice of the Code of Procedure, and adopt all of its provisions and the practice thereunder. In re Safe Deposit & Savings

Inst. [Id. 12,211]. By section 91, the assignee can commence an action upon the grounds set forth in his affidavit. Martin v. Smith [Id. 9,164]. The time when an assignee must commence an action, as per section 2 of the bankrupt act, must be governed by the nature of the action. If on a civil contract, within the two years named in the act. If on a matter where fraud is alleged, then from the time the knowledge of the commission of the fraud by the bankrupt, or from the date of the information of the commission of the acts constituting the fraud. Thus by the laws of the state of New York, "an action for relief on the ground of fraud in cases which, heretofore, were solely cognizable by the court of chancery, the cause of action in such cases is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud." Code, § 91, p. 80. In this case, under the bankrupt act, the assignee must be considered the aggrieved party and his information of the alleged fraud was obtained, viz.: June, 1872. In this case, as in the cases mentioned by the act of congress, April 5, 1866, § 2 [14 Stat. 13], state laws must be construed as applicable, also as to the act of congress, April 9, 1866, § 3 [Id. 27], known as the "Civil Rights Bill." Where the laws of the state "shall be extended to and govern said (United States) courts in the trial and disposition of such causes." The act of congress, July 16, 1862 [12 Stat. 588], provides "that the laws of the state in which the court shall be held shall be the rules as to the competency of witnesses in the courts of the United States." By this act the witness is competent to testify, as he is the party to the record in the bankruptcy proceedings in which this assignee was appointed.

By act of congress, February 28, 1839 [5 Stat. 321], "no person shall be imprisoned for debt in any state, on process arising out of the district court of the United States for the District of Columbia." As to District of Columbia, see act of February 3, 1853 (10 Stat. 53), "a court of the United States, where by the laws of such state, imprisonment for debt has been abolished and where by the laws of a state, imprisonment for debt shall be allowed, under certain conditions and restrictions, the same conditions and restrictions shall be applicable to the process issuing out of the courts of the United States and the same proceedings shall be had therein as adopted in the courts of such states." On the 1st day of June, 1872, congress passed a law entitled "An act to further the administration of justice," section 5 of which is as follows: "That the practice, pleadings, and forms and modes of proceeding in other than equity and admiralty causes in the circuit and district courts of the United States shall conform, as near as may be, to the practice, pleading and forms existing at the time in like causes in the courts of record of the state within which

such circuit or district courts are held, any rule of court to the contrary notwithstanding." The word "forms" in this act is used instead of the word "proceedings" in one part of the act, but the word "proceedings" makes the sentence more full and complete than the phrase used in the Code, thereby, including proceedings by petition, all summary proceeding as well as those by suit or action. The act of congress, June 1, 1872, is but the enacting of the rule of law as established by the courts of the United States and at once conforms the practice and pleadings as to the time of the commencement of action in the United States court, to the laws of state in which the action is commenced, and in this case, section 91, par. 6, of the Code must govern as to when an action may be commenced. The federal courts have very generally held that the statute did not commence to run until the fraud was discovered. Mr. Justice Story states the doctrine of equity thus: "If a party has perpetrated a fraud which has not been discovered until the statutable bar may apply to it at law, courts of equity will interfere to remove the bar out of the way of the injured party." Story, Eq. Jur. § 1521. "The question often arises in cases of fraud or mistake, under what circumstances and at what time the bar of the statute begins to run. In cases of fraud and mistake it will begin to run," he says, "from time of the discovery of such fraud or mistake, and not before." Id. § 1521a. That as fraud is a secret thing and may remain undiscovered for a length of time, during such time the statute of limitations shall not operate, because until discovery the title to avoid it does not completely arise, &c. Pending the concealment of the fraud, the statute ought not in conscience to run, &c. Hovenden v. Lord Annesley, 2 Sch. & L. 624.

GRIER, J., speaking of this point when delivering the opinion of the supreme court, says: "Especially must there be a distinct allegation as to the time when the fraud was discovered and what the discovery is, so that the court may see whether by the exercise of ordinary diligence it ought not have been before made." Carr v. Hilton [Case No. 2,437]; Fisher v. Boody [Id. 4,814]; Moore v. Green [Id. 9,763]; Id., 19 How. [60 U. S.] 69. And the bill, it has been said, should negative laches in not making the discovery. Mayne v. Griswold, 3 Sandf. 463; Field v. Wilson, 6 B. Mon. 479. As to what amounts to a discovery within the meaning of the equity rule. This is regarded as so important that it must with all necessary circumstances be distinctly stated in the bill. Lord Erskine, in one case, declared that "no length of time can prevent the uncovering of a fraud." Forester, 66. Lord Worthington, said, with emphasis, in Alden v. Gregory, 2 Eden. 285, "Never, while I sit here, will delay purge a fraud." The title to avoid the fraudulent transaction does ordinarily arise as soon as the fraud is perpetrated (26 Eng. Law & Eq. 425; J. J.

Marsh. 445; 33 Miss. 233; 20 Johns. 33, supra), but substantially it does not, because the fraud is not known, and hence the fraudulent wrong doer is estopped, while the aggrieved party is kept ignorant of his rights from setting up against him the bar of the statute.

This subject was discussed by a truly great judge in the case of Carr v. Hilton [Case No. 2,436], which was a suit in equity by an assignee in bankruptcy to recover of the defendant, lands fraudulently conveyed to him by the bankrupt. The defendant relied on the statute of limitations found in the bankrupt act of 1841. In holding that the cause of action did not accrue to the assignee till the fraud was discovered, Curtis, J., says: "Statutes of limitations do not run in cases of fraud while it is secret. It is objected that the bill does not contain any averment that the cause of action was fraudulently concluded. But it does state a case of secret fraud, and it would be difficult to distinguish this from fraudulent concealment. A secret, or what is the same thing, concealed fraud, is a fraudulent concealment of the cause of action." This I assent to as a perspicuous and accurate statement of the law on this point. The right of the assignee to commence an action or proceedings, or take any legal steps to possess himself of, or to recover from others the property of the bankrupt to which he is entitled by virtue of the proceedings in bankruptcy, does not terminate, if at all, until two years after the knowledge of the existence of such property and rights of the bankrupt which vested in the assignee, in a manner and with sufficient certainty, that it may be called due legal notice. Martin v. Smith [Case No. 9,164]; [Gates v. Andrews] 37 N. Y. 657. Such notice, I hold, the assignee had in the month of June, 1872, and that the limitation, if any, since the act of congress, June 1, 1872, commenced to run from that date. The practice of the courts of this state in relation to actions in relation to fraud in the conveying of real estate must govern in this matter.

The decision of the United States supreme court in [U. S. v. Wilder] 13 Wall. [80 U. S.] 254, upon limitations in certain actions, does not in any way or manner affect the question of practice or the rights of the assignee. Upon the application of the assignee and upon the affidavit heretofore mentioned, I issued an order for the examination of the bankrupt, dated and returnable the same day as the summons heretofore mentioned, upon which order the same proceedings were had, the same objections were made and the same rulings made as in the case of the summons. As to the question of the right of the assignee to examine the bankrupt after two years have expired from the discharge of the bankrupt, under section 26 of the bankrupt act, it cannot now be considered an open question. The decision of this court in the Case of Heath & Huges [Case No. 6,304] has settled the rules of practice in this district, that

a bankrupt may be so examined. The assignee has a right to employ an attorney and also counsel to bring any action or to conduct any proceeding in relation to the estate, and when he employs licensed practitioners it is not the province of the bankrupt to question the right of the assignee so to do, or to object to the person or persons so employed. The more energetic and efficient the persons employed, the more commendable and proper is their selection by the assignee. It is the duty of the register having charge of the case to see that none but fit and proper persons are employed by assignees as attorneys; and should an assignee improvidently employ an unfit, improper or dishonest attorney, it would be the duty of the register to certify that fact to the court, in order that the assignee might be directed by the court to dismiss such attorney, and employ a proper person.

I decide: First. That the summons was authorized by law; that the assignee was in duty bound to apply for and obtain it, as he did upon ascertaining the facts as set forth in his affidavit; that the proceedings are correct and should be proceeded under; that the act of congress, June 1, 1872, controls the practice as to the time of the commencement of an action in a case like this, and the limitation of two years in section 2 of the bankrupt act does not apply in this case, and that clause 6 of section 91 of the Code of Practice on Procedure of this state does. Second. That an assignee has a right, subject to the approval of the register, to select an attorney to aid him in the prosecution of claims due an estate. It is his duty to do so, and so long as he employs a fit and proper person as his attorney, the motive of such attorney either in accepting or procuring such employment is not a matter to be taken into consideration by the court. Third. That Mr. Dole can be examined as a witness, upon the application of the assignee, in relation to any property or effects of his estate, and to discover what, if any, effects of said Dole passed to the assignee under and by virtue of the assignment. That the assignee was in duty bound to do so, after the facts set forth in his affidavit came to his knowledge. That he has a right to take the examination of the bankrupt as a witness; and also may examine witnesses in order to discover any property or effects of the bankrupt, to the possession of which he was entitled by virtue of the assignment, and should he, upon such examination, discover property to which he is entitled as assignee it will be his duty to apply to the court for an order that it be delivered to him, or he may commence an action therefor according to the facts. And the assignee, after he has taken this examination, if he shall find that any person other than the bankrupt is possessed of property which should have passed to him under the assignment, it will be his duty to possess himself of the same without legal

proceedings if he can, with legal proceedings if he must, from the person having the property. That the discharge of the bankrupt does not prevent the assignee from following the estate of the bankrupt, which should have passed to the hands of the assignee, in whomsoever, or wherever, it may be found, in the same way or manner as an executor, trustee or receiver could, except in all matters relating to the bankruptcy he must apply to the United States courts. That the declination on the part of Mr. Dole to be sworn as a witness, previous to the final decision of the legal question raised by the filing of the preliminary papers, does not in any way or manner constitute a contempt of court as contemplated by law. That the order for the examination of Mr. Dole, as a bankrupt, although made more than two years subsequent to his discharge, was properly issued in accordance with the law and the rules and practice of this court. That Mr. Dole must be sworn under either or both of the proceedings.

BLATCHFORD, District Judge. The second and fourth objections are well taken. The first and third objections are not well taken. Nothing is intended to be decided hereby as to the point respecting the statute of limitations. It is not proper to decide that point until it is raised directly in a formal suit. On the second objection the register ought to suspend all further proceedings under the order and summons. No ground is shown for now permitting the submission of affidavits on behalf of the assignee.

(Subsequent to this decision, on a motion to amend the order as to the second objection, Judge BLATCHFORD directed the issuing of a new order, which was issued in accordance with his order.)

